IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FARMERS INSURANCE COMPANY OF OREGON; FARMERS INSURANCE EXCHANGE; TRUCK INSURANCE EXCHANGE; MID-CENTURY INSURANCE COMPANY;** and **FARMERS NEW WORLD LIFE INSURSANCE COMPANY**,<br><br>   Plaintiffs,<br><br> v.<br><br>**MITCHELL S. GELFAND; KAREN A. GELFAND; DEPARTMENT OF REVENUE, STATE OF OREGON; MCNARY ESTATES BUSINESS CENTER, LLC;** and **NW PREFFERED FEDERAL CREDIT UNION**,<br><br>   Defendants,<br><br> v.<br><br>**UNITED STATES OF AMERICA**,<br><br>   Intervenor Defendant. | Case No. 3:14-cv-870-SI<br><br>**OPINION AND ORDER** |

PAGE 1 – OPINION AND ORDER

Timothy W. Snider, STOEL RIVES LLP, 900 SW 5th Avenue, Suite 2600, Portland, OR 97204. Of Attorneys for Plaintiffs.

Ellen F. Rosenblum, Attorney General, Kristin A. Gilman, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street NE, Salem OR 97301. Of Attorneys for Defendant Oregon Department of Revenue.

David J. Zarosinski and Eric C. Hartwig, ZAROSINSKI HARTWIG P.C., 520 SW 6th Ave., Suite 1200, Portland, OR 97204. Of Attorneys for Defendant Karen Gelfand.

Mark B. Comstock, GARRETT HEMANN ROBERTSON P.C., 1011 Commercial Street NE, Salem, Oregon 97301. Of Attorneys for Defendant McNary Estates Business Center, LLC.

Caroline D. Ciraolo, Acting Assistant Attorney General, Dylan C. Cerling, Trial Attorney, Tax Division, U.S. DEPARTMENT OF JUSTICE, P.O. Box 683, Washington D.C. 20044. Of Attorneys for Intervenor Defendant United States of America.

**Michael H. Simon, District Judge.**

This is an interpleader action brought by Farmers Insurance Company of Oregon and related entities (collectively, "Farmers") to resolve competing claims made on certain funds held by Farmers on behalf of Defendant Mitchell S. Gelfand ("Mr. Gelfand"). Pending before the Court are cross-motions for summary judgment filed by Defendant McNary Estates Business Center, LLC ("McNary") and Defendant Karen A. Gelfand ("Ms. Gelfand"). Dkts. 24, 27.[1] For the reasons that follow, McNary's motion is granted and Ms. Gelfand's motion is denied.[2]

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Intervenor Defendant United States of America also has filed a partial opposition to Ms. Gelfand's motion for summary judgment. Dkt. 32. That motion contends that, in the event Ms. Gelfand's motion for summary judgment is granted, all funds to which she is entitled should be disbursed to the United States to satisfy certain federal tax liens. As discussed below, because the Court denies Ms. Gelfand's motion for summary judgment, she is not entitled to any of the interpleaded funds currently held by the Court.

[2] As discussed below, Mr. Gelfand has failed to appear in this action. *See infra* n.5. NW Preferred Federal Credit Union was previously dismissed from this case. *See infra* p. 6.

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed

that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Gelfand was a district manager employed by Farmers. As a benefit of Mr. Gelfand's employment, Farmers held a contract value payment fund[3] on his behalf valued at more than $300,000. For reasons not relevant to the present action, sometime before August 2012, Mr. Gelfand abandoned his insurance practice without paying his debts, failed to report or pay state and federal taxes for several years, and neglected to provide financial support to his then-wife, Ms. Gelfand, and the couple's two children. As a result of Mr. Gelfand's actions, each of the defendants in this matter claimed some interest in the contract value payment fund held by Farmers. Simply put, this matter involves deciding the relative priority of each party's interest in Mr. Gelfand's contract value payment fund. Becuase a determination regarding the priority of each party's interest largely turns on when that party perfected its interest, the Court lays out the following background and procedural history in roughly chronological order.

On August 6, 2012, Ms. Gelfand filed a Petition for Dissolution of Marriage in Clackamas County Circuit Court in Oregon (the "Gelfand Divorce Proceeding") seeking, among other things: divorce, division of marital property, spousal support, child custody, and child support from Mr. Gelfand. On August 7, 2012, the Clackamas County Circuit Court entered a Mutual Property Restraining Order under Or. Rev. Stat. § 107.093 to "restrain each party in the dissolution action from taking certain actions to transfer encumber, conceal, or dispose of property in which the other party has an interest."

---

[3] A contract value payment fund is described as a "reserve or retirement type of account," which is "available to a Farmers agent or district manager if he resigns, retires, or is discharged by Farmers."

On September 5, 2012, McNary filed a complaint against Mr. Gelfand in Marion County Circuit Court. On November 30, 2012, that court entered a default judgment against Mr. Gelfand. On December 3, 2012, McNary issued a writ of garnishment to Farmers naming as debtors Mr. Gelfand and his business.

On March 18, 2013, a Default General Judgment and Decree of Dissolution (the "Divorce Judgment") was entered in the Gelfand Divorce Proceeding. In the Divorce Judgment, Ms. Gelfand was awarded, among other things, the following:

> B. To the extent it is not claimed by parties with a superior legal interest, $200,000 of the Farmers [contract value payment fund] shall be distributed to Wife, Karen Gelfand, at the earliest of such time or times as it is subject to distribution to Husband for the purposes of meeting Husband's spousal and child support obligations to his wife and children.
>
> C. After the payment of $200,000 to Wife for support, the balance in the Farmers [contract value payment fund], if any, shall be equally divided between Husband and Wife.

Dkt. 28, Ex. 6. The Divorce Judgment further notes that the contract value payment fund was "the only financial resource there is for the payment" of Mr. Gelfand's support obligations. *Id*.

On April 22, 2013, Farmers initiated this matter by filing an interpleader action in Clackamas County Circuit Court against Mr. Gelfand, Ms. Gelfand, the Oregon Department of Revenue ("DOR"), McNary, and NW Preferred Federal Credit Union ("NW Preferred"). Farmers subsequently deposited a check in the amount of $305,665.48 with the circuit court. On August 20, 2013, the circuit court dismissed Farmers from the case. *See* Dkt. 4, Ex. 10.

On September 16, 2013, the circuit court ordered $158,070.06 of the interpleaded funds disbursed to NW Preferred. *See* Dkt. 4, Ex. 7. Those funds were disbursed, and the circuit court subsequently dismissed NW Preferred from the case.

On April 21, 2014, Intervenor Defendant United States of America ("United States") filed a both motion to intervene and a complaint in intervention in Clackamas County Circuit Court. The United States asserted a claim to the funds at issue based upon certain federal tax liens. On May 22, 2014, the motion to intervene was granted. On May 27, 2014, the United States filed its Intervenor Complaint. On May 30, 2014, the United States filed a Notice of Removal under 28 U.S.C. § 1446(b), removing the present action to this Court.[4]

On June 30, 2015, based upon the stipulations of the remaining parties, this Court ordered $22,554.16 be disbursed to DOR, and further ordered that all claims against DOR were dismissed. Dkt. 44.

On July 2, 2015, the United States informed the Court that, on August 1, 2014, Ms. Gelfand had filed for bankruptcy, and on November 4, 2014, was granted an order of discharge. *See In re Karen Gelfand*, Case No. 14-bk-34441-rld7. Dkt. 45.

## DISCUSSION

Interpleader allows a plaintiff stakeholder to join in a single action those parties who assert claims to a common fund held by the stakeholder. *First Interstate Bank of Oregon, N.A. v. U.S. By & Through I.R.S.*, 891 F. Supp. 543, 546 (D. Or. 1995) (citing 7 Charles A. Wright et al., Federal Practice and Procedure § 1702, at 493 (2d ed. 1986); *see generally* Fed. R. Civ. P. 22; 28

---

[4] The United States invoked 28 U.S.C. § 1444 as its basis for removing the action. *See* Dkt 4, Ex. 2. Section 1444 provides that "[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States." 28 U.S.C. § 1444. Section 2410, in turn, provides that "the United States may be named a party in any civil action or suit . . . in any State court having jurisdiction of the subject matter [ ] . . . of interpleader . . . with respect to[ ] real or personal property on which the United States has or claims a mortgage or other lien." *Id.* § 2410(a). *See Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1131 (9th Cir. 2011) (discussing removal by the United States in tax lien cases).

U.S.C. § 1335; ORCP 31. An interpleader action usually involves two distinct stages. First, the court determines the propriety of interpleading the adverse claimants and relieving the stakeholder from liability. The second stage involves an adjudication of the adverse claims of the defendant claimants. 3A James WM. Moore & Jo D. Lucas, Moore's Federal Practice §§ 22.14[1] and [2] (2d ed. 1994); *see also Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1265 (9th Cir. 1992) (describing an interpleader action as follows: "[T]he 'stakeholder' of a sum of money sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money.").

The present motions before the Court involve a determination at this second stage. Consistent with a series of stipulations filed between the parties (*See* Dkts. 12, 17, 20, 22, and 23) and the parties' briefing in this matter, the remaining Defendants—McNary, Ms. Gelfand, and the United States[5]—all agree that the remaining funds held by the Court are only sufficient to satisfy the claims of one party. Further, the United States stipulates that McNary's interest in the contract value payment fund is superior to its own.[6] Dkt. 12. Ms. Gelfand and McNary, however, each claim that their own interest in the fund is superior to the other party's interest.

Thus, despite the complex procedural history of this case and its related state court proceedings, the question now before the Court is relatively straightforward: When marital property has been awarded to one spouse (here, Ms. Gelfand) in a state court divorce proceeding,

---

[5] Although Mr. Gelfand is technically still a defendant in this case, he has failed to appear in this action. Regardless, the Court finds that his interest in the contract value payment fund is subordinate to that of all other Defendants and thus does not discuss his interest in the interpleaded funds further.

[6] As discussed above, the United States does not concede priority to Ms. Gelfand because of taxes that it claims are jointly owed to the United States by Mr. and Ms. Gelfand, notwithstanding Ms. Gelfand's bankruptcy order. *See* Dkt. 32 and n.1, *supra*.

PAGE 7 – OPINION AND ORDER

does a judgment creditor's (here, McNary) interest in that same marital property take priority over the spouse's interest if the judgment creditor perfects its interest *after* the filing of the divorce proceeding but *before* the entry of judgment in the divorce proceeding? This issue is complicated slightly, however, by the presence of the United States in this action, because the United States' federal tax lien affects the Court's choice of law analysis. Accordingly, the Court first determines what law applies to this action, and second, determines the relative priority of McNary and Ms. Gelfand under the appropriate law.

### A. What Law Applies

It is well settled that federal law determines the priority of competing federal and state created liens. *See United States v. Rodgers*, 461 U.S. 677, 683 (1983); *see also Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1134 (9th Cir. 2011) (quoting *Aquilino v. United States*, 363 U.S. 509, 514 n. 5 (1960) ("[F]ederal law governs the relative priority of federal tax liens and state-created liens."); *Bus. Title Corp. v. Div. of Labor Law Enforcement*, 553 P.2d 614, 618 (1976) ("It is now well settled and indeed beyond argument that federal law rather than state law determines the priority of competing liens where one of them is a tax lien asserted by the United States."). "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954) (internal quotation marks omitted)).

Just as federal law governs the issue of priority, it is equally well settled that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest . . . in the property . . . to be reached by the statute." *Aquilino*, 363 U.S. at 513 (quoting *Morgan v. Commissioner*, 309 U.S. 78, 82 (1940)); *see also Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (courts must proceed from "the basic assumption that Congress did not intend to

PAGE 8 – OPINION AND ORDER

displace state law"). "The point at which a state created security interest attaches is a matter of state law." *ICM Mortg. Corp. v. Herring*, 758 F.Supp. 1425, 1426 (D. Colo. 1991) (citing *Sec. Pac. Mortg. Corp. v. Choate*, 897 F.2d 1057, 1058-59 (10th Cir. 1990)). Federal revenue statutes "creat[e] no property rights but merely atta[ch] consequences, federally defined, to rights created under state law." *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1235 (1st Cir. 1996) (quoting *United States v. Bess*, 357 U.S. 51, 55 (1958). For this reason, "it is critical to determine "when competing state created liens come into existence or become valid." *Progressive Consumers Fed. Credit Union*, 79 F.3d at 1235 (citation and quotation marks omitted); *see also Aquilino*, 363 U.S. at 514 (holding that reconciliation of state law defining when a state created lien becomes effective and federal law governing priority between competing liens "strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes").

Accordingly, the respective interests that McNary and Ms. Gelfand possess in the contract value payment fund are questions of state law. After the nature of the parties' respective interests in the fund is established, the presence of the United States in this action requires the Court to apply the federal common law principle of "first in time, first in right" to determine the priority of the parties' respective interests. Accordingly, the Court need answer only two further questions: (1) what interests do McNary and Ms. Gelfand possess; and (2) when did they perfect those interests?

## B. McNary and Ms. Gelfand's Interests in the Interpleaded Funds

### 1. McNary's Interest

The nature of McNary's interest in the contract value payment fund is not disputed by any party. The judgment lien of McNary against Mr. Gelfand first arose on November 30, 2012,

PAGE 9 – OPINION AND ORDER

when a default judgment was entered against Mr. Gelfand in Marion County Circuit Court. Execution by writ of garnishment was delivered to Farmers, as holder of the contract value payment fund on December 3, 2012.[7] Thus, McNary held a perfected interest in the contract value payment fund as of December 3, 2012.

### 2. Ms. Gelfand's Interest

The nature of Ms. Gelfand's interest in the contract value payment fund is a more difficult question and involves an analysis of Oregon's domestic relations law. More specifically, it depends on the operation of Or. Rev. Stat. §§ 107.105 and 107.115.

Or. Rev. Stat. § 107.105 governs the division of marital property. Under Or. Rev. Stat. § 107.105(1)(f), a court has authority to divide all of the property held by the parties at the time of dissolution, regardless of how the property is titled and regardless of when it was acquired. *In re Marriage of Herald & Steadman*, 355 Or. 104, 120 (2014); *In re Marriage of Kunze*, 337 Or. 122, 133 (2004). Property subject to the divorce court's disposition authority is commonly called "marital property."[8] *Id.* The statute further directs the court to divide property at dissolution in a

---

[7] Under Oregon law, entry of a judgment creates a lien on all of a judgment debtor's real property located in the county in which the judgment is entered. Or. Rev. Stat. § 18.150(2). The judgment's entry does not, however, create a lien on personal property in the judgment debtor's possession. Such a lien is only created when the sheriff, pursuant to a writ of execution obtained by the judgment creditor, actually levies on the personal property, as a predicate to the property's sale to satisfy the judgment. *In re Grogan*, 476 B.R. 270, 275 (Bankr. D. Or. 2012); s*ee also* Or. Rev. Stat § 18.878(2) (providing that, "[w]hen a sheriff levies on personal property . . . the interest of the judgment creditor in the personal property is the same as that of a secured creditor with an interest in the property").

[8] Or. Rev. Stat. § 107.105(1)(f) creates two classes of property—marital property and marital assets. *Pierson and Pierson*, 294 Or. 117, 121-22 (1982). Marital property is the "real or personal property, or both, of either or both of the parties," and constitutes the entire class of property subject to the dispositional authority of the court in a marital dissolution action. Or. Rev. Stat. § 107.105(1)(f); *Pierson*, 294 Or. at 121. "Marital assets" include all the "real or personal property, or both, acquired by either of the spouses, or both, during the marriage." Or. Rev. Stat. § 107.105(1)(f); *Stice v. Stice*, 308 Or. 316, 325 (1989); *Pierson*, 294 Or. at 121-22. "Marital assets" do not include assets brought into the marriage by either spouse, nor do they

PAGE 10 – OPINION AND ORDER

manner that is "just and proper in all the circumstances." Or. Rev. Stat. § 107.105(1)(f). "To achieve that directive, the statute empowers the court to distribute any *real or personal property* that either or both of the parties hold at the time of dissolution, including property that the parties had brought into the marriage." *Kunze*, 337 Or. at 133 (emphasis added).

Further, the mere filing of marital dissolution proceedings brings the married couples' interest in marital property "into question," and "all of the marital assets are subject to an equitable apportionment by the trial court." *In re Marriage of Cortese*, 260 Or. App. 291, 300 (2013) (citing *Hoyt v. American Traders. Inc.*, 301 Or. 599, 609 (1986)) (holding that a wife's petition for dissolution constituted *lis pendens* notice of her priority over liens subsequently created by creditor's registration of judgment against husband). Specifically, under Or. Rev. Stat. § 107.105(1)(f)(E), when the marital dissolution proceeding is filed, the property of each spouse becomes subject to a vested, but inchoate claim of the other spouse. As that section explains:

> Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets under a judgment of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property.

*Id.*; *see also In re Goss*, 413 B.R. 843, 848 (Bankr. D. Or. 2009) (analyzing Or. Rev. Stat. § 107.105(1)(f)(E) in the context of bankruptcy proceedings and noting that, under Oregon law, a spouses "pre-petition inchoate co-ownership interest" becomes a secured claim only upon entry of the divorce judgment); *In re Engle*, 293 Or. 207 (1982) (discussing text and legislative history of Or. Rev. Stat. § 107.105). Consequently, at the time of Ms. Gelfand's divorce filing—August 6, 2012, one month before McNary filed its complaint against Mr. Gelfand—the property

---

include assets acquired after dissolution of the marriage. *Id.* at 121. Marital property is a larger class of property than marital assets: "Property may be subject to the dispositional authority of the court, yet not be a marital asset." *Stice*, 308 Or. at 325.

PAGE 11 – OPINION AND ORDER

interests of both Mr. and Ms. Gelfand were "vested but subject to subsequent definition." *In re Goss*, 413 B.R. at 848 (quoting *White v. Bell*, 212 B.R. 979, 983 (10th Cir. BAP 1997).

As laid out in Or. Rev. Stat. § 107.105(3) and 107.115(1), however, the vested, but inchoate claims of each spouse created upon filing of the divorce proceeding become "effective for all purposes" only upon filing of a divorce judgment. Or. Rev. Stat. § 107.105(3) ("Upon the filing of the judgment, the property division ordered shall be deemed effective for all purposes"); Or. Rev. Stat. § 107.115(1) ("A judgment of annulment or dissolution of a marriage restores the parties to the status of unmarried persons . . . .The *judgment* gives the court jurisdiction to award, *to be effective immediately*, the relief provided by ORS 107.105.") (emphasis added); *Grassmueck v. Food Indus. Credit Union*, 127 B.R. 869, 872 (Bankr. D. Or. 1991) (analyzing the effect of Or. Rev. Stat. § 107.105(3) in the context of bankruptcy proceedings and holding that dissolution decree became effective upon entry of judgment).

Based upon this analysis of Or. Rev. Stat. § 107.105(3) and 107.115(1), as of the filing of the divorce proceeding on August 6, 2012, Ms. Gelfand possessed a vested, but inchoate claim on the contract value payment fund. That interest was subject to "subsequent definition" in the Divorce Judgment that was issued on March 18, 2013. Accordingly, under Oregon law, the Divorce Judgment itself governs the status of Ms. Gelfand's interest in the contract value payment fund.

As previously stated, in the Divorce Judgment, Ms. Gelfand was awarded, among other things, the following:

> B. *To the extent it is not claimed by parties with a superior legal interest*, $200,000 of the Farmers [contract value payment fund] shall be distributed to Wife, Karen Gelfand, at the earliest of such time or times as it is subject to distribution to Husband for the purposes of meeting Husband's spousal and child support obligations to his wife and children.

PAGE 12 – OPINION AND ORDER

> C. After the payment of $200,000 to Wife for support, the balance in the Farmers [contract value payment fund], if any, shall be equally divided between Husband and Wife.

Dkt. 28, Ex. 6 (emphasis added). The emphasized language is dispositive: Ms. Gelfand's interest in the contract value payment fund is subordinate to any party with a superior legal interest. Thus, any party's interest that was perfected before entry of the Divorce Judgment on March 18, 2013 is superior to the interest of Ms. Gelfand. Following the common law "first in time, first in right" analysis outlined above, McNary holds a superior legal interest in the funds because its interest was perfected on December 3, 2012, upon execution of a writ of garnishment delivered to Farmers.

Ms. Gelfand, however, objects to this analysis on the basis that McNary had actual or inquiry notice of Ms. Gelfand's divorce filing before it obtained a judgment in its own suit against Mr. Gelfand. According to Ms. Gelfand, on September 11, 2012—6 days after McNary filed its complaint against Mr. Gelfand in Marion County Circuit Court—a person employed by McNary's counsel searched the state courts' electronic filing database (known as "OJIN") looking for lawsuits involving Mr. Gelfand.[9] That search, if properly performed, would have revealed the earlier petition for dissolution filed by Ms. Gelfand on August 6, 2012. *See* Dkt. 28, Ex. 5 and 7. Ms. Gelfand argues that because McNary had either actual or inquiry notice of the petition for dissolution, Oregon law requires that McNary's interest in the contract value payment fund be subordinate to the interest later awarded to Ms. Gelfand in the Divorce Judgment.

---

[9] McNary does not deny that one of its employees searched OJIN for other lawsuits pending against Mr. Gelfand. Instead, McNary asserts that it did not have actual notice of the Gelfand Divorce Proceeding and that any suggestion to the contrary is speculative.

PAGE 13 – OPINION AND ORDER

In support this argument, Ms. Gelfand rests almost entirely upon *In re Marriage of Cortese*, 260 Or. App. 291 (2013), a recent decision from the Oregon Court of Appeals. According to Ms. Gelfand, *Cortese* holds that an Oregon Circuit Court may, by entry of judgment in a dissolution proceeding, divest a third-party creditor of one spouse of the creditor's secured interest in the property if that creditor had actual or inquiry notice of the divorce proceeding. A close reading of *Cortese* and other similar Oregon cases, however, does not support this conclusion.

The facts of *Cortese* are, at least superficially, similar to the instant case. In *Cortese*, Wife filed for divorce in Clackamas County Circuit Court. *Id.* at 292. After Wife filed for divorce, Husband's Parents filed a lawsuit in Multnomah County Circuit Court and subsequently obtained a default judgment against Husband in that matter. *Id*. Husband's Parents then issued a writ of execution to the Clackamas County Sheriff, ordering satisfaction of the default judgment amount out of Husband's personal property. *Id*. Husband's Parents' attorney then instructed the Sheriff to levy and sell specific personal property then in possession of Wife. *Id*. Shortly thereafter, the sheriff seized the personal property and provided notice of a public auction date. *Id*.

At this point, the similarities between *Cortese* and the present case end. In *Cortese*, when Wife learned of the default judgment and efforts to execute it, she objected to the sale of any marital property, and the sheriff's sale was postponed pending the outcome of the dissolution hearing. *Id.* Wife then moved under Oregon Rule of Civil procedure ("ORCP") 29 A[10] to join

---

[10] ORCP 29 A states:

> A person who is subject to service of process shall be joined as a party in the action if (1) in that person's absence complete relief cannot be accorded among those already parties, or (2) that person claims an interest relating to the subject of the action and is so

PAGE 14 – OPINION AND ORDER

Husband's Parents as necessary parties to the dissolution proceeding so that complete relief could be accorded to Husband and Wife. *Id.* The trial court granted that motion. *Id.* After trial, the circuit court entered a judgment awarding Wife, among other things, the specific personal property identified by Husband's Parents in their writ of execution, "free of any claim by husband or parents." *Id*. at 293. The circuit court based this decision on its "explicit[] [finding] that [Husband's] parents had actual notice not only of the dissolution proceeding but of the restraining order itself." *Id*. at 302. Husband and Husband's Parents appealed. *Id*.

Citing Or. Rev. Stat. § 107.105(1)(f) and two earlier Oregon Court of Appeals' cases involving the disposition of interests in real property,[11] the court in *Cortese* found that Husband's Parents' actual knowledge of the divorce proceedings and the related asset restraining order

---

> situated that the disposition in that person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of their claimed interest. If such person has not been so joined, the court shall order that such person be made a party. If a person should join as a plaintiff but refuses to do so, such person shall be made a defendant, the reason being stated in the complaint.

[11] Those two cases were *Strawn v. Eder*, 97 Or. App. 281 (1989), and *Slauson v. Usher*, 39 Or. App. 303 (1979). *Strawn* is a short, three-page opinion relying almost entirely upon *Slauson* without further analysis. *Slauson*, however, does not hold that Or. Rev. Stat § 107.105(1)(f)— then numbered Or. Rev. Stat §107.105(1)(e) —empowers a circuit court to divest a creditor with inquiry notice of a divorce filing of its secured interest in personal property, as Ms. Gelfand contends. Instead, the court in *Slauson* explained that its holding resulted from Oregon law governing notice of option interests in real property and mortgage foreclosure proceedings. *Id*. at 307-309. Or. Rev. Stat. § 107.105 was relevant to the court's reasoning only to the extent that the underlying option interest was created by the divorce judgment rather than by contract. *Id*. at 307 ("[T]here is no readily apparent reason why an option interest in real property created by a dissolution decree should not have the same legal status as one created by contract."). Accordingly, the Court finds that *Strawn* and *Slauson* do not support Ms. Gelfand's position in this matter.

PAGE 15 – OPINION AND ORDER

made their prior interest "subject to the jurisdiction of the court in the dissolution proceeding." *Cortese*, 260 Or. App. at 302. In so finding, however, the Court of Appeals emphasized that:

> [T]he trial court found that parents' default judgment against husband "was largely orchestrated by [husband] and calculated to divert marital assets to . . . parents in contravention of the asset restraining order in this proceeding." Therefore, parents are deemed to have been aware that any attempt to obtain a possessory interest in property subject to disposition in the dissolution proceeding—that is, under ORS 107.105(1)(f), personal property belonging to either husband or wife, or both of them—was ultimately subject to the jurisdiction of the court in the dissolution proceeding.
>
> Given parents' actual notice of the dissolution proceeding, any possessory rights or security interest that they obtained in the [personal property] by way of the default judgment and writ of execution against husband was taken subject to the trial court's authority in this proceeding to effect a division of assets that is "just and proper in all the circumstances." ORS 107.105(1)(f). Therefore, the trial court acted within that authority when it awarded the [personal property] to wife free of any encumbrance by parents.

*Id*. Accordingly, the Court finds that the holding in *Cortese* is limited to its particular context: *i.e.* circumstances where a state court specifically finds that a creditor's interest in marital property was created solely to circumvent that court's authority to divide marital property under Or. Rev. Stat. § 107.105.

This interpretation of *Cortese* is supported by the Oregon Court of Appeals' opinions in other factually similar cases. For example, in *In re Marriage of Timm*, 200 Or. App. 621 (2005), Husband's Parents obtained a default judgment against Husband. The circuit court found that Husband's Parents' underlying lawsuit was a sham designed by Husband to "improve [Husband's] financial position . . . to the detriment of [Wife]." *Id*. at 624. The Court of Appeals affirmed the circuit court's opinion, noting that Or. Rev. Stat. § 107.105(1)(f) gave the circuit court the authority ignore the default judgment and adjust any property division accordingly if it

PAGE 16 – OPINION AND ORDER

found that Husband's Parents' underlying lawsuit was a sham. *Timm*, 200 Or. App. at 626; *see also Matter of Marriage of Shelley*, 127 Or. App. 616 (1994) (holding that where payments to a third party are designed to reduce the assets available for division in a dissolution proceeding, money so paid may be included in the property division); *Matter of Marriage of Howard*, 103 Or. App. 342, 349 (1990) (analyzing Or. Rev. Stat. § 107.105(1)(f) and holding that "[w]hen a transfer of marital assets has been made without the consent of the other spouse, the trial court may consider that in determining what is a 'just and proper' property division"). This case law further demonstrates that *Cortese* is properly read as only one of a consistent line of cases from the Oregon Court of Appeals dealing with one spouse's wrongful dissipation of marital assets through sham lawsuits designed to circumvent a circuit court's authority to equitably divide marital property.

Moreover, *Cortese* is distinguishable from the present action in a more basic way. In *Cortese*, Husband's Parents (as third-party creditors of Husband) were made a party to the divorce proceedings under ORCP 29. As that court noted, "failure to join parents, who claim a possessory interest over the marital assets, might have prevented the trial court from dividing those marital assets as 'may be just and proper in all the circumstances' under ORS 107.105(1)(f)." *Cortese*, 260 Or. App. at 299; *see also McGoldrick and McGoldrick*, 85 Or. App. 412, 416 (1987) (noting that a conveyance of real property to a husband's children could not be set aside if grantees were not made parties to the dissolution proceeding). In the present action, however, Ms. Gelfand obtained the Divorce Judgment by default; McNary was never made a party to that action. Thus, the Divorce Judgment does not purport to determine the interest of any party other than Mr. and Ms. Gelfand, and more importantly, expressly states that

PAGE 17 – OPINION AND ORDER

Ms. Gelfand's holds an interest in the contract value payment fund only "[t]o the extent it is not claimed by parties with a superior legal interest." Dkt. 28, Ex. 6.[12]

This places the Court right back where it started with its earlier inquiry: (1) what interests do McNary and Ms. Gelfand possess; and (2) when did they perfect their interests? Following the common law "first in time, first in right" analysis that the Court must use in this matter, McNary holds a superior legal interest in the funds because its interest was perfected on December 3, 2012, three months before Ms. Gelfand's interest was perfected by the Divorce Judgment and operation of Or. Rev. Stat. § 107.105(3) and 107.115(1).

## CONCLUSION

McNary Estates Business Center, LLC's Motion for Summary Judgment (Dkt. 24) is GRANTED. Karen A. Gelfand's Motion for Summary Judgment (Dkt. 27) is DENIED. After conferring with all relevant parties, McNary may submit a proposed form of Judgment.

**IT IS SO ORDERED**.

DATED this 24th day of July, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[12] The Divorce Judgment's decision to award Ms. Gelfand $200,000 of the contract value payment fund only "[t]o the extent it is not claimed by parties with a superior legal interest," also makes practical sense. The circuit court expressly found that the fund was the only asset that Mr. Gelfand had available to pay his support obligations. Because no party other than Ms. Gelfand was before the court to object to any division of marital property, the circuit court wisely did not attempt to decide the potential interests in that fund possessed by unknown third parties. Thus, Ms. Gelfand's assertions regarding McNary's actual or inquiry notice of the Gelfand Divorce Proceeding are beside the point: Even if Or. Rev. Stat. § 107.105(1)(f) gave the circuit court the power to divest third-party creditors of their interest in personal property, the Divorce Judgment expressly did not do that.